[No. 3414.  Decided February 8, 1900.]

ANDREW OLSON et al., Respondents, v. SNAKE RIVER VALLEY RAILROAD COMPANY et al., Appellants.

VARIANCE—WHEN PREJUDICIAL—AMENDMENT OF PLEADING.

The fact that the complaint alleges complete performance of a specific contract, while the proof shows a part performance only and an excuse for non-performance of the contract in its entirety, does not constitute a failure of proof, but a variance merely, and, under Bal. Code, § 4950, a variance, even if material, is not ground for dismissal of the action, but the court is authorized to order the pleadings amended upon such terms as may be just upon a showing that the adverse party has been misled to his prejudice by the variance.

MECHANIC'S LIEN—DEFECTIVE NOTICE—AMENDMENT ON FORECLOSURE.

Under Bal. Code, § 5904, which provides that a lien notice may be amended the same as pleadings, after action brought to foreclose the same, by order of the trial court, if the interests of third parties are not thereby affected, the supreme court will treat a defective lien notice as it does a defective pleading, and, where the insufficiency of the lien notice was not particularly pointed out to the trial court, will consider it as amended in all cases where substantial justice has been done, and the alleged defect has not operated to the injury of the complaining party.

CONTRACTS—CONSTRUCTION.

A contract which provides to pay plaintiff a certain price for "3000 cubic yards for finishing the cut according to stakes set by the engineer, and to his satisfaction," must be construed as referring to stakes then in place, and not as requiring the plaintiffs to continue the excavation according to stakes subsequently set by the engineer.

SAME—NON-PERFORMANCE.

In an action to recover for work performed in excavating for a road bed, the plaintiffs are not precluded from recovering because of failure to excavate a ditch alongside of the roadbed, where the engineer has refused to furnish them the necessary levels, without which the work could not be done.

Appeal from Superior Court, Walla Walla County.— Hon. THOMAS H. BRENTS, Judge.  Affirmed.

· *Lester S. Wilson,* for appellants.

*Pedigo & Cain* and *Thomas & Dovell,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—In the fall of 1898 the appellant, The Snake River Valley Railroad Company, was the owner of a right-of-way, extending north from Wallula Junction, in Walla Walla county, to Snake river, and thence easterly along the river to the eastern boundary line of that county, and was engaged in constructing a railroad thereon.    The railroad company let the contract for the construction work to the appellant, J. A. Caughren, who sub-let to Roman & Swanson, who, in turn, on the 26th day of January, 1899, entered into a contract with the respondents by the terms of which they undertook and agreed to do the excavating for some three hundred feet, being the part between stations 2482 and 2485.    The engineer of the company had set stakes on the ground, showing the amount of the excavation, and the respondents undertook to excavate to the stakes set at seven cents per cubic yard for all material removed.    After this was done, the engineer discovered that the slope as originally calculated was not sufficient to protect the roadbed, and thereupon changed the same, setting back the stakes, necessitating more excavation.    The respondents thereupon excavated to the stakes as reset, when the engineer made a second change, setting the stakes still further back, requiring further excavation.    Up to this time the contract between Roman & Swanson and the respondents had been oral, but after the second change in the stakes the respondents insisted upon a writing, when the following memorandum was drawn up and signed:

" That said Roman & Swanson, parties of the first part, agree to pay to Mike Olson & Co., parties of the second part, ten (10) cents per cubic yard and free tools and horse without teamster, for three thousand (3000) cubic yards

for finishing the cut according to stakes set by the engineer, and to his satisfaction, and eight (8) cents per cubic yard and free tools and team for the balance of the cut, said cut being situated at station 2482 to station 2485 inclusive, also according to the estimate to be furnished by the engineer when said cut is finished."

The respondents then proceeded with the work, and, after excavating to the stakes as set when the written contract was made, called for the "second grade stakes," which were necessary to define the depth of the cut alongside the roadbed over which the track is laid.    The engineer concluded that the slopes of the banks as made were not yet sufficient, and changed the stakes for the third time.    The respondents refused to excavate further, and demanded of the engineer an estimate of the amount of the work already performed, which the engineer refused to give them. They then demanded pay from Roman & Swanson for the amount excavated at the contract price, basing their charge upon estimates made by themselves.    On the refusal of Roman & Swanson to pay them they filed a lien, and began this action to foreclose the same.    The court found for the respondents and entered a decree of foreclosure, from which this appeal is taken.

At the close of respondents' testimony the appellants moved for a non-suit on the ground that the respondents were seeking to recover on another and different cause of action than the one set out in the complaint.    This motion was denied, and the ruling of the court thereon is the first error assigned.    The argument in support of the objection is that the complaint sets out a specific contract and alleges a full and complete performance of the same, while the proofs show a part performance only, and an excuse for the non-performance of the contract in its entirety; and that this constitutes such a variance between the pleadings and proofs as to preclude a recovery by the respondents.

Conceding that there is a variance between the pleadings and the proofs, it is not, under the code, necessarily fatal to the respondent's right of recovery. The code (§ 4949, Ballinger's) provides,

" No variance between the allegation in a pleading and the proof shall be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits," and,

" Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just."

By § 4950 it is provided that, when the variance is not material, the fact may be found according to the evidence, without requiring the pleadings to be amended. The object of these provisions of the Code was to correct the harshness of the common law rules relating to variance. They were intended to prevent a suitor having a meritorious cause of action from being thrown out of court, or a defendant having a valid defense from presenting that defense, for mistakes in his pleadings which do not affect the merits of the controversy, or prejudice the rights of his adversary. Hence, under the rule of the Code, it avails a litigant nothing to show a variance between his adversary's pleadings and proofs without showing a resulting injury. It must appear that he was, to repeat the language of the Code, "misled . . . to his prejudice, in maintaining his action or defense upon the merits." Further, it will be noticed the statute requires the showing of prejudice to be made to the trial court, whose duty it then becomes to determine its sufficiency. If the court finds, upon such showing, that the adverse party has been misled to his prejudice by the variance—finds that the variance is material—it may order the pleadings amended

upon such terms as may be just; but, if it finds the variance not material, it may order the facts to be found according to the evidence without amendment, or may order an immediate amendment without costs. § 4950. No authority is given the trial court to dismiss the action, or disregard a defense, because of a variance merely, and to do so would amount, in most instances, to an abuse of discretion.    This authority is given only when the "allegation of the cause of action or defense to which the proof is directed is not proved, not in some particular or particulars only, but in its entire scope and meaning," which "shall not be deemed a case of variance within the last two sections, but a failure of proof." § 4951. From these considerations this court will not presume error prejudicial to the complaining party simply because it may find a variance between the pleadings and proofs of his adversary. Nor will it review the rulings of the trial court thereon, where a showing of prejudice has been made before that court, unless the evidence for and against such showing is brought here in the record along with the court's rulings. In the present case the appellants made no attempt to show that they had been misled to their prejudice by the alleged variance, but contented themselves with moving to non-suit the plaintiffs, and it was not error for the trial court to deny their motion.

The case of *Distler v. Dabney,* 3 Wash. 200 (28 Pac. 335), and kindred cases from this court holding the same doctrine, are cited in support of the appellants' contention. A most casual examination of these cases, we think, will show that the court had under discussion a departure in pleading, and a failure of proof, rather than a variance between the pleadings and proofs, and that they are not in point to the latter question.    *Murray v. Meade,* 5 Wash. 693 (32 Pac. 780); *Davis v. Hinchcliffe,* 7 Wash. 199 (34 Pac. 915).

It is insisted that the lien notice is insufficient, in that the property sought to be charged with the lien is not described therein with sufficient certainty. This precise defect was not pointed out to the court below, and, under the statute as it now exists, cannot, for that reason, avail the appellants here. The statute (§ 5904) provides that the lien notice may be amended, after action brought to foreclose the same, by order of the trial court, "as pleadings may be, in so far as the interests of third parties shall not be affected by such amendment." This statute is broad enough to permit an amendment as to description, and, had the objection been pointed out to the trial court, it would have been that court's duty to have allowed the lien notice to be amended in the absence of conflicting interests of third persons. This being so, this court will treat a defective lien as it does a defective pleading, and consider it as amended in all cases where substantial justice has been done, and the defect complained of has not operated to the injury of the complaining party. The earlier decisions of this court, cited by appellants in support of this branch of their case, were made under a statute containing none of the liberal provisions of the present one, and, however applicable they might be to a defect of this character under the statute as it then existed, they have no force under a statute like the one now existing.

It is next insisted that the proofs failed to show a compliance with the contract on the part of the respondents, and that a non-suit should have been granted for that reason. The appellants argue that the language of the contract, which requires the respondents to finish the cut "according to stakes set by the engineer, and to his satisfaction," when interpreted in the light of the surrounding circumstances, must necessarily mean that the respondents were required to excavate, not only to the stakes then set, but to any stakes the engineer should thereafter set, until

the cut was completed to his satisfaction; that this is made clear when it is considered that it was the object of the railroad company to make a safe roadway, and that it was impossible to tell in advance what amount of slope would be required for that purpose,—all of which the respondents knew when they entered into the contract. But it would hardly seem that the conclusion necessarily flows from the reasons given. It was just as competent for the parties to contract for the excavation of a part of the required cut as it was for the whole, and the fact that the railroad company required a completed roadbed is not a sufficient reason for saying that the respondents agreed by the writing in question to make it so. What the respondents agreed to do must be determined from the language used in the contract itself, without a resort to extrinsic aids, unless an inspection of the language used to express the intention of the parties leaves in doubt what the real intention was. Here we find no such doubt. A reading of the whole agreement convinces us that the phrase, "according to stakes set by the engineer," referred to stakes then in place. It is the only construction that will give meaning to it, for, if the construction of the appellants be correct, the contract is expressed without this phrase, and it must be treated as surplusage, which, it is needless to say, violates a cardinal rule governing the construction of contracts. But, if we may consider extrinsic aids, the record leaves no doubt as to the true meaning of the contract. It was shown that the former changes in the grade stakes made by the engineer had been a fruitful source of differences between the respondents and the other parties to the contract, and that the writing was intended as a modification and explanation of the original oral contract, and to fix definitely the existing

grade stakes as the extent of the excavation that could be required of the respondents under the original contract.

It is also contended, in support of this branch of the case, that the admission of the respondents to the effect that they had not excavated the ditch alongside of the roadbed, precluded their right to recover for the work which they did perform. While it was admitted they did not excavate the ditches, it was shown that they did not do so because of the refusal of the engineer to furnish them with necessary levels, without which the work could not be done. Even if it be admitted that the contract called for the performance of this work, the failure to furnish the levels was a sufficient excuse for its nonperformance.

The further contention, that the work was not done to the satisfaction of the engineer, is not in accord with the evidence. The engineer made no objection to the manner in which the work was done. His dissatisfaction was with the depth and slope of the cut after the appellants had excavated to the amount of their contract. But this was no fault of the respondents; if fault lay anywhere, it was with the engineer. The respondents having performed their work in accordance with the contract, dissatisfaction of the engineer with his own work would not preclude them from recovering.

The judgment of the lower court is affirmed.

GORDON, C. J., and DUNBAR and REAVIS, JJ., concur.